IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R., a minor child by and through her guardian ad litem Ebony Pilgrum,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | No. 2:22-CV-0696-DMC<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, a minor child who is proceeding with retained counsel and a guardian ad litem, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 8 and 9, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 10 (minute order assigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 12 and 13.

/ / /

/ / /

/ / /

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

**I. THE DISABILITY EVALUATION PROCESS**

This case involves a child's application for social security benefits. Child's Supplemental Security Income is paid to disabled persons under the age of eighteen. A child is considered disabled if the child has a medically determinable physical or mental impairment that results in marked and severe functional limitations. See 42 U.S.C. § 1382c(a)(3)(C)(I). The Commissioner employs a three-step sequential evaluation process to determine whether a child is

/ / /

/ / /

disabled. See 20 C.F.R. § 416.924(a)-(d). The sequential evaluation proceeds as follows:

> Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;
>
> Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
>
> Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets, medically equals, or functionally equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted.
>
> See id.

Evaluation of a childhood disability claim does not involve determination of the claimant's residual functional capacity or consideration of vocational issues.

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on February 19, 2019. See CAR 15.[1] In the application, Plaintiff claims disability began on February 19, 2019. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 22, 2021, before Administrative Law Judge (ALJ) Vincent A. Misenti. Subsequent to the hearing, additional evidence was received by the ALJ. See id.

In a May 27, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1.    The claimant has not engaged in substantial gainful activity and has the following severe impairment(s): attention deficit hyperactivity disorder; oppositional defiance disorder; and anxiety disorder; and

///

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on July 20, 2022, ECF No. 11.

3

        2.       The claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in the regulations;

See id. at 16-27.

After the Appeals Council declined review on February 24, 2022, this appeal followed.

## III. DISCUSSION

In the opening brief, Plaintiff argues that the ALJ erred in failing to find that Plaintiff's mental impairments functionally equal a listed impairment. See ECF No. 12, pg. 3. More specifically, Plaintiff contends that the severe mental impairments identified by the ALJ functionally equal Listing 112.11 concerning neurodevelopmental disorders. See id. at 9-13.

Regarding functional equivalence at Step 3 of the childhood disability sequential evaluation process, the ALJ first described the relevant regulations and social security ruling:

> If the claimant has a severe impairment or combination of impairments that does not meet or medically equal any listing, the undersigned must determine whether the claimant has an impairment or combination of impairments that functionally equals the listings. When determining functional equivalence, the undersigned evaluates the "whole child" (see Social Security Ruling 09-1p), by considering how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs.
>
> The undersigned must consider how the claimant functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. Our rules explain that a claimant has a "marked" limitation in a domain when her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities, and a claimant has an "extreme" limitation" in a domain when her impairment(s) "interferes very seriously" with these same abilities. In making this assessment, the undersigned must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments (20 CFR 416.926a).
>
> Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other

sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

    The undersigned finds that the claimant has:
- less than a marked limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;
- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;
- less than a marked limitation in the ability to care for himself/herself; and
- no limitation in health and physical well-being.

In determining the degree of limitation in each of the six domains of functioning, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 09-2p through 8p, and 16-3p.

CAR 19-20.

Plaintiff does not challenge the ALJ's determination with respect to acquiring and using information, moving about and manipulating objects, ability to care for oneself, or health and physical well-being. Plaintiff argues that, contrary to the ALJ's determination, Plaintiff has marked limitation in the categories of attending and completing tasks as well as interacting and relating with others. See ECF No. 12, pg. 9.

In order to have a marked limitation, Plaintiff must present evidence that an impairment seriously interferes with Plaintiff's ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a. In making this assessment, the ALJ looks to the following factors: (1) how well Plaintiff can initiate and sustain activities, how much extra help Plaintiff needs, and the effects of structured or supportive settings, see 20 C.F.R. § 16.924a(b)(5); (2) how Plaintiff functions in school, see 20 C.F.R. § 416.924a(b)(7); and (3) the effects of Plaintiff's medications or other treatment, see 20 C.F.R. § 416.924a(b)(9).

As to both domains, Plaintiff argues:

    Claimant submits that while her school records do show some progress and improvement academically with medication and treatment, her teacher's report indicates that she continues to have serious to very serious limitations in multiple aspects of the domains of attending and completing tasks and interacting and relating with others. As discussed

5

above, Claimant was noted by her teachers in 2020 to exhibit significantly limited attention in school and was easily distracted. She had a difficult time managing her self-control, regulating her impulsive behaviors, and building or maintaining satisfactory interpersonal relationships with peers and teachers. Claimant required special education in a small-group setting. (Tr. 193.) Claimant's teachers noted that she was a hardworking and helpful student, but her language arts and math skills were all below standard. (Tr. 195.)

Claimant's special education teacher, Heidi Holman, wrote a letter in which she explained that Claimant had multiple severe symptoms which made it difficult for her to participate well in the classroom. Claimant had a very hard time sitting still and often got out of her seat to wander around the classroom without permission. She tended to blurt things out and talk over the teacher and other students. She demonstrated emotional swings including high energy and then extreme low points involving crying, hitting her head on the wall, running away, and silence or refusal to participate in class. She could be rude and hurtful to other students and say mean things to them. She would try to show off with certain peers by talking loudly, running around, jumping on furniture, and being disruptive. The teacher explained that Claimant had a hard time concentrating and staying still and would shut down when something was too hard or when consequences were applied. (Tr. 198.) These issues made it very hard for Claimant to finish schoolwork and maintain healthy relationships with peers and adults. (Tr. 199.)

These school records are consistent with the medical evidence from San Joaquin Mental Health and the report from Claimant's counselor, Lauren Barajas, as detailed above, showing Claimant's continued issues with inability to regulate her emotions and behaviors both at home and in school, poor peer relationships, and inability to maintain attention and concentration. Barajas opined in May 2020 that Claimant continued to demonstrate anger. Claimant was severely impaired in her ability to get along at home, demonstrating aggressive behaviors, irritability, fidgeting, yelling/screaming, tantrums, difficulty focusing, easy distraction, frequent worry, impulsivity, and hyperactivity. Claimant was severely limited in her social functioning outside of the house, displaying anger, bullying others, having difficulty focusing, impulsivity, hyperactivity, tantrums, fidgeting, and lying. She was severely impaired in managing her symptoms as well. (Tr. 324.)

Claimant's teacher, Holman, made it clear that although Claimant had made some progress in math and reading, she was still working below grade level in 2020 (after beginning medication) and she continued to have severe difficulties staying in her seat at school, paying attention, focusing, and getting along with her peers. Claimant would get upset when she didn't know how to do something or got a problem wrong and would shut down (put her head on the desk, cry, or walk around the classroom). These "shut down" behaviors typically occurred every day for 10 to 20 minutes at a time. Claimant was having negative behaviors towards her peers about 5 times each day. She had made progress in math and writing, as well as attendance. Holman noted Claimant did not have a filter and would say things without thinking about how it would sound to a peer. She often got into arguments with peers because she would say rude things and she had a tendency to lie. Holman noted Claimant had the hardest time making friends because she was socially inappropriate. She had a low tolerance for frustration and would have a harder time sitting still

> towards the end of the day. Claimant would engage in non-compliant behaviors such as pacing, running away, crying, or hitting her head on the wall when something was too difficult. (Tr. 224.) Claimant required 5 prompts per hour in class to refocus her attention. (Tr. 225.)
>
> * * *
>
> Claimant submits that the cumulative evidence above from her teacher and her treating mental health provider establishes that despite some improvement with treatment, her limitations in the domains of attending and completing tasks and interacting and relating with others are still at the marked level. Claimant's teacher explained that she was still unable to regulate her emotions or behavior, could not make friends, and still required at least 5 prompts per hour to redirect her attention in class. The regulations, as detailed above, indicate that the agency will consider reports from teachers and parents in addition to reports from medical professionals in evaluating the cumulative functional effects of a claimant's impairments. The ALJ here erred in placing too much weight on the snapshot of Claimant's functioning produced by the consultative examiner and the non-examining state agency reviewers and not enough weight on the statements from Claimant's treating counselor and teacher. These statements, from those who interact with Claimant every day, establish that her functional limitations are still at a marked level despite medication.
>
> ECF No. 12, pgs. 10-13.

Plaintiff relies on the "cumulative evidence" from her teacher, Ms. Holman, CAR 193-202 (Exhibit 7E), 216-253 (Exbibit 12E), and her treating mental health provider, Ms. Barajas, CAR 318-369 (Exhibit 6F), to support her contention that Plaintiff has marked limitations.

Exhibit 7E contains an October 19, 2019, assessment by Ms. Holman, who has been Plaintiff's special education teacher since August 1, 2019, in which she states:

> J[] has multiple, severe symptoms that make it difficult for her to participate well in the classroom. She has a very difficult time sitting still, which causes her to get out of her seat and wander around the classroom without permission. She has a tendency to blurt out and talk over me and other students. She demonstrates emotional swings, in which he has a lot of energy (especially around peers her age) and then extreme downs (crying, hitting her head on the wall, eloping, silence and refusal to participate in the classroom). J[] has a difficult time with peer relationships, in which she can be rude and hurtful to fellow students. "Friends" she has within the class. . . repeatedly report that she is being a bully or saying mean things to them – mostly girls. She tries to show off with peers she admires by talking loudly, running around sitting and jumping on furniture, and being generally disruptive.

///

> Due to the fact that J[] has a hard time concentrating and staying still and then shuts down when something is too hard or she has consequences, it is very difficult for her to finish work and maintain healthy relationships with peers and adults. . . .

CAR 198-199.

On the same date as this assessment – October 19, 2019 – Ms. Holman completed a check-the-box assessment form. See id. at 201-202. Ms. Holman stated that Plaintiff "very often" exhibits the following behavior: (1) difficulty sustaining attention to tasks or activities; (2) difficulty following through on instructions and finishing schoolwork; (3) difficulty engaging in tasks that require sustained mental effort; (4) difficultly avoiding distractions by extraneous stimuli; (5) difficulty staying in her seat when remaining seated is expected; (6) running about the classroom; (7) difficulty playing or engaging in leisure activity quietly; (8) difficulty waiting in line; (9) interrupting others; (10) losing her temper; (11) active defiance and refusal to comply; and (12) bullying. See id. at 201. Ms. Holman also assessed Plaintiff as "problematic" with respect to relationships with peers, disrupting class, and completing assignments. See id. at 202.

Exhibit 7E also contains an Individualized Education Program (IEP) assessment and plan dated May 4, 2020, which is at the end of Plaintiff's first year in special education class with Ms. Holman. See CAR 193-202. In this assessment, and in stark contrast to the report from the start of the school year in October 2019, Ms. Holman states:

> J[] is a very hardworking and helpful student. J[] is always willing to help the adults and students in the classroom. She likes helping the lowest students with their work. She works well when in a small group setting or working one on one with an adult. Her educational strengths include writing and mathematics. She responds well to positivity and realistic consequences for her behavior. She likes to talk through her decisions and have discussions on what better choices she could make in various circumstances. She is interested in her relationship with her sister, social issues, basketball, shoes (fashion), and things she finds funny.

CAR 195.

The IEP report of May 2020 also notes that Plaintiff's parent has "no concerns" regarding Plaintiff's educational progress. See id.

///

Exhibit 12E contains additional (and sometimes duplicative) information related to the May 2020 IEP assessment. See id. at 216-253. Notably, Ms. Holman reported: "Her behaviors have been improving in the classroom." Id. at 223.

Records from Ms. Barajas, Plaintiff's counselor, are contained at Exhibit 6F. See CAR 318-369. The record contains a report completed by Ms. Barajas on May 4, 2020. See id. at 318-323. In the portions of this report cited by Plaintiff – CAR 324 – Ms. Barajas noted severe impairments with regard to various activities of daily living. See CAR 324.

### A.     Attending and Completing Tasks

Attending and completing tasks described the ability to focus and maintain attention, and the ability to begin, carry through, and finish activities, including the pace at which tasks are performed and how well tasks can be changed. See 20 C.F.R. § 416.926a(h). Examples of limited function in this category include: (1) Plaintiff is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; (2) Plaintiff is slow to focus on, or fails to complete activities of interest, such as games or sports; (3) Plaintiff repeatedly becomes sidetracked from activities or Plaintiff frequently interrupts others; (4) Plaintiff is easily frustrated and gives up on tasks, including ones Plaintiff is capable of completing; and (5) Plaintiff requires extra supervision to keep engaged in an activity. See 20 C.F.R. § 416.926a(h)(3)(i)-(v).

Regarding this domain, the ALJ stated:

> The claimant has less than marked limitations in attending and completing tasks.
>
> At the initial and reconsideration determination levels, the DDS State Agency medical consultants opined that the claimant has less than marked limitations in this domain (Exhibit 1A, p. 6; Exhibit 3A, p. 6). The State Agency consultants noted that the claimant was alert and demonstrated adequate concentration during the psychological consultative evaluation (Exhibit 1A, p. 6; Exhibit 3A, p. 6). The Administrative Law Judge notes that even prior to obtaining psychiatric medications, the claimant was able to undergo a battery of psychological tests (Exhibit 4F). The psychological consultative examiner reported that the claimant's concentration was adequate with testing showing working memory index of 74, which is considered in the borderline range and a processing speed index of 80, which is in the low average range (Exhibit 4F, p. 3). Further, the claimant's abstract reasoning, thought processes and motor activity were fair to normal and she was deemed to be moderately limited in engaging in and performing sustained activity for a period of time and completing tasks at a pace that is age appropriate (Exhibit 4F, pp. 8-9). The records

>from San Joaquin Child Mental Health also support less than marked limitations in this domain. In May 2020, the claimant's mother reported that the claimant was "doing good with her attention and impulsivity" at the higher dose of Adderall (Exhibit 6F, p. 22). In July 2020, Ms. Pigrum reported that the claimant was doing better with attention and focus, as well as doing her tasks (Exhibit 6F, p. 28). In October 2020, Ms. Pigrum reported to Dr. Ansari that the claimant is more attentive and tolerates the Adderall well (Exhibit 6F, p. 37). In December 2020, Ms. Pigrum reported that the claimant was paying attention and doing her schoolwork (Exhibit 6F, p. 43). In January 2021, it was reported that the claimant is more attentive with the ADHD medications (Exhibit 6F, p. 45). In April 2021, Ms. Pigrum reported that the claimant was doing well and is attentive (Exhibit 6F, p. 52). The Administrative Law Judge notes that the mental status examinations from San Joaquin Child Mental Health shows no acute deficits in attention.
>
>The Administrative Law Judge finds the opinions of the DDS State Agency medical consultants and the consultative examiner persuasive because they are consistent with and supported by the longitudinal treatment record as a whole.

CAR 21-22.

The records relied on by Plaintiff – reports from Ms. Holman and Ms. Barajas – do not support a finding of "marked limitation" in the domain of attending and completing tasks. To the contrary, instead of showing that Plaintiff's impairments seriously interfere with her ability to independently initiate, sustain, or complete activities, the records show a stark improvement over the course of one year in special education classes over the 2019-2020 academic year.  In October 2019, Ms. Holman noted serious problems.  However, by May 2020, Ms. Holman noted remarkable improvement.  Notably, Plaintiff's mother express "no concerns" in May 2020.

The portion of the record relating to Ms. Barajas cited by Plaintiff does not change this conclusion.  Notably, that record reflects Ms. Barajas' conclusions regarding activities of daily living, not the domain of attending and completing tasks.

Moreover, as the ALJ noted, the unchallenged reports from the agency doctors at Exhibits 1A, 3A, and 4F provide substantial evidence to support the ALJ's conclusion that Plaintiff has less than a marked limitation in the domain of attending and completing tasks.

/ / /

/ / /

### B. **Interacting and Relating with Others**

Interacting and relating with others describes how well Plaintiff initiates and sustains emotional connections with others, develops and uses language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. See 20 C.F.R. § 416.926a(i). Examples of limited function in this category include: (1) Plaintiff does not have close friends, or Plaintiff's friends are all older or younger than Plaintiff; (2) Plaintiff avoids or withdraws from people Plaintiff knows, or Plaintiff is overly anxious and fearful of meeting new people or trying new experiences; (3) Plaintiff has difficulty playing games or sports with rules; (4) Plaintiff has difficulty communicating with others; and (5) Plaintiff has difficulty speaking intelligibly or with adequate fluency. See 20 C.F.R. § 416.926(i)(3)(ii)-(vi).

Regarding this domain, the ALJ stated:

> The claimant has less than marked limitations in interacting and relating with others.
>
> At the initial and reconsideration determination levels, the DDS State Agency medical consultants opined that the claimant has less than marked limitations in this domain (Exhibit 1A, p. 6; Exhibit 3A, p. 6). The State Agency consultants noted that the claimant was generally euthymic during the psychological consultative evaluation and that although the claimant was withdrawn, she was polite and made fair eye contact (Exhibit 1A, p. 6; Exhibit 3A, p. 6). The State Agency consultants also noted some of the claimant's difficulties in school, particularly the report that the claimant had been bullied (Exhibit 3A, p. 6). Records from San Joaquin Child Mental Health show that the claimant has improved ability to interact with others, although she still has some difficulties. In May 2020, Ms. Pigrum reported that the claimant's tantrums were minimal and she had some outbursts related to frustration with doing school work on the computer (Exhibit 6F, p. 22). In July 2020, Ms. Pigrum reported that the claimant had some moodiness, but she had been doing better (Exhibit 6F, p. 28). In September 2020, the claimant reported that she was not getting upset for not understanding what was being taught online and she reported that the medications help her to be calm (Exhibit 6F, p. 34). In October 2020, the claimant was reportedly involved in mischief relating to a visit to her grandmother's house (Exhibit 6F, p. 37). However, the claimant was not on her medications at that time. In January 2021, Ms. Pigrum reported that the claimant was still defiant at times, but is "redirectable" (Exhibit 6F, p. 46). Ms. Pigrum reported that the claimant was not having anxiety-related symptoms any longer and she had received no complaints from the claimant's school (Exhibit 6F, p. 46). In March 2021, Ms. Pigrum reported that the claimant is defiant at times and has tantrums at times, but is much better with medications (Exhibit 6F, p. 49). In April 2021, Ms. Pigrum reported that the claimant demonstrates some defiance, but with

> medication as needed, the symptoms of defiance or aggression improve (Exhibit 6F, p. 52). The Administrative Law Judge notes that the mental status examinations show no evidence of significant difficulty interacting with the claimant or the claimant demonstrating acute limitations in this domain. During the hearing, the claimant testified that she has no friends, but enjoys going to her cousins' house and watching television, playing videogames and playing outdoors with them.
>
> After reviewing the entire record, the Administrative Law Judge finds that the claimant has less than marked limitations in this domain. The Administrative Law Judge finds the opinions of the DDS State Agency consultant and the consultative examiner persuasive because they are consistent with the claimant's school, the medical records as of November 2019 and the claimant's testimony that she enjoys the company of her cousins and gets along well with her family although she does not have friends. Accordingly, the Administrative Law Judge finds the opinions of the DDS State Agency consultants and the consultative examiner consistent with and supported by the medical and other evidence of record.

CAR 22-23.

As with the domain of attending and completing tasks, discussed above, Plaintiff relies on records from Ms. Holman and Ms. Barajas at Exhibits 7E, 12E, and 6F.  Again, the Court finds these records support the ALJ's conclusion as they show Plaintiff demonstrated significant improvement over the course of the 2019-2020 academic year while in special education classes with Ms. Holman.  Likewise, the portion of Ms. Barajas' report cited by Plaintiff relates to activities of daily living and not the domain of interacting and relating to others.  Finally, as with the domain discussed above, Plaintiff does not challenge the ALJ's reliance on the agency doctors' reports at Exhibits 1A, 3A, and 6F, which also support the ALJ's conclusion.

The Court, therefore, finds that the ALJ's conclusion that Plaintiff has less than a marked impairment in the domain of interacting and relating to other is supported by substantial evidence in the record as a whole.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

       1.    Plaintiff's motion for summary judgment, ECF No. 12, is denied;

       2.    Defendant's motion for summary judgment, ECF No. 13, is granted;

       3.    The Commissioner's final decision is affirmed; and

       4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  May 4, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE